**Eid ABU–HASHISH and Sheam Abu–Hashish, Plaintiffs,**

v.

**SCOTTSDALE INSURANCE COMPANY, Defendant.**

No. 98 C 4019.

United States District Court, N.D. Illinois, Eastern Division.

March 16, 2000.

---

Edward Eshoo, Jr., Scott Anthony Morgan, Childress & Zdeb, Ltd., Chicago, IL, for plaintiffs.

Thomas J. Finn, Leahy, Eisenberg & Fraenkel, Chicago, IL, for defendant.

---

## MEMORANDUM OPINION
## AND ORDER

LEVIN, United States Magistrate Judge.

At issue before the court is Plaintiffs' Motion in Limine and for Partial Summary Judgment. Plaintiffs are asking this court to enter in limine an order barring Defendant, Scottsdale Insurance Company ("Scottsdale"), from eliciting at the time of trial, certain opinion testimony. Plaintiffs are also seeking an entry of summary judgment against Defendant as to Defendant's first, second and fourth affirmative defenses.[1] For the reasons set forth below, Plaintiffs' Motion is denied.

### BACKGROUND

Plaintiffs own a three-story building located at 1347–49 West Roosevelt Road in Chicago. At approximately 1:42 AM on April 23, 1997, a fire occurred on the second and third floors of the building. At the time of the fire, the building was insured by Defendant. Plaintiffs were the named beneficiaries under the insurance policy.

Approximately thirty minutes after the fire began, certified fire investigator Alfred Marcucci ("Marcucci") of the Chicago Fire Department Office of Fire Investigations arrived on the scene. Marcucci inspected the premises, but did not remove any physical evidence or artifacts, nor did he observe any flammable combustible accelerants. Based on the burn patterns, he determined that there was only one fire which had spread from the second floor to the third floor. It was Marcucci's opinion that the fire was a deliberate incendiary[2] fire caused by a person(s) using a hand held open flame ignition source and deliberately lighting combustible materials that were positioned along the wall of the second floor apartment's dining room.

Scottsdale retained Denis O'Halloran ("O'Halloran"), a certified fire inspector, to conduct an investigation into the cause and origin of the fire. On May 13, O'Halloran inspected the premises and observed empty fuel containers in the third floor front apartment. O'Halloran did not remove any physical evidence or artifacts, nor did he take any fire debris samples to be tested for the presence of an accelerant. Based on the burn patterns, he determined that the fire originated on the second floor. He also determined that a separate fire originated on the third floor. It was his opinion that the cause of both fires was incendiary.

Linda Boose ("Boose"), a Chicago Bomb and Arson Detective, inspected the scene after the fire had been extinguished. Prior to entering the building, she spoke with Marcucci, who allegedly told her that the fire appeared to have been accidental. Boose's opinion was that vagrants had been occupying the second floor apartment and that the cause of the fire was the ignition of available materials by an open flame.

John Agosti ("Agosti"), a certified fire investigator retained by Plaintiffs, reviewed all of the reports prepared by the Chicago Police and Fire Departments, the

---

**1.** Defendant's first affirmative defense states: "Plaintiffs' loss as alleged in Plaintiffs' Complaint is specifically excluded because Plaintiffs either intentionally caused the fire or the fire was caused with one or both of Plaintiffs' consent or authority, or the fire was caused by an authorized representative of one of the Plaintiffs in violation of the terms and conditions of said [insurance] policy."

Defendant's second affirmative defense states: "Plaintiffs' loss as alleged in Plaintiffs' Complaint is specifically excluded because Plaintiffs made material misrepresentations to Defendant in an attempt to defraud Defendant".

Defendant's fourth affirmative defense states: "Plaintiffs either intentionally caused the fire or the fire was caused with one or both of the Plaintiffs' consent or authority, or the fire was caused by an unauthorized representative of on or both of the Plaintiffs. As a matter of public policy, Plaintiffs should be barred from recovery."

**2.** An "incendiary" fire is defined as "a fire that has been deliberately ignited under circumstances in which the person knows the fire should not be ignited." *National Fire Protection Association Publication 921* § 17–1 (1985).

deposition testimony of O'Halloran and Boose and National Fire Protection Association Publication 921. Based on this review, Agosti's opinion was that the fire in the third floor apartment was an extension of the fire which originated in the second floor apartment. It was also Agosti's opinion that the cause of the fire should have been classified as "undetermined" because there was a lack of physical evidence which would have allowed for a determination to a reasonable degree of fire certainty, that the fire was incendiary.

Plaintiffs submitted a claim to Scottsdale seeking to recover the actual cash value of the damage to the building. Scottsdale denied the claim, in part, on the ground that the fire resulted from the intentional act of the insured or an authorized representative of the insured.

### ANALYSIS

The crux of the dispute between the parties centers around whether or not the opinions of Denis O'Hallaran and Alfred Marcucci are admissible. Federal Rule of Evidence 702 provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise." [3]

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589, 113 S.Ct. 2786, 2795, 125 L.Ed.2d 469 (1993), the Supreme Court held that Federal Rule of Evidence 702 imposes a special obligation upon a trial judge to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." The Court went on to explain that the standard of evidentiary reliability "requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Id.* at 592, 113 S.Ct. 2786.

Plaintiffs argue that O'Hallaran and Marcuccis' opinions are not reliable because they are not grounded in methods and procedures of science as mandated by National Fire Protection Association Publication ("NFPA") 921, a recognized guide for use by fire investigators in the fire investigation process. Section 2–2 of NFPA 921 suggests a systematic approach "of the scientific method, which is used in the physical sciences. This method provides for the organizational and analytical process so desirable and necessary in a successful investigation." NFPA 921 explains that the "scientific method is a principal of inquiry that forms a basis for legitimate scientific and engineering processes, including fire incident investigations." The scientific method is applied using a six-step formula: (1) recognize the need; (2) define the problem; (3) collect data; (4) analyze the data (inductive reasoning); (5) design a hypothesis; and (6) test the hypothesis (deductive reasoning).

Plaintiffs maintain that O'Hallaran's opinion that the fire was incendiary in nature is not based on the scientific method because the only physical evidence that he observed at the fire scene was a series of burn patterns. In other words, O'Hallaran had no physical evidence to support his conclusion that the fire was incendiary other than the burn patterns, which, according to O'Hallaran's deposition, could also have supported a conclusion that the fire was careless (*i.e.,* not incendiary).

Also, Plaintiffs contend that Marcucci's opinion that the cause of the fire was incendiary in nature is not based on the scientific method. The only physical evidence observed by Marcucci was burn patterns, which, according to Marcucci's deposition, would also be consistent with someone accidentally dropping a cigarette in the area where the fire originated.

---

**3.** The parties do not dispute that O'Hallaran and Marcucci have the requisite knowledge, training and experience as to be considered experts in the field of fire investigation. The dispute is over the methods and procedures that O'Hallaran and Marcucci used to investigate the fire(s) and to reach their conclusions.

Plaintiffs conclude that because the data which serves as the basis for O'Hallaran and Marcuccis' opinions does not support a conclusion within a reasonable degree of fire science certainty that the fire(s) was incendiary, their opinions are based on subjective belief and unsupported speculation. Therefore, according to Plaintiffs, O'Hallaran and Marcuccis' opinions are unreliable and inadmissible under Federal Rule of Evidence 702. Accordingly, Plaintiffs' motion claim is that these witnesses' opinions should be barred from evidence at trial and that Plaintiffs are entitled to summary judgment on Defendant's first, second and fourth affirmative defenses (which are premised on these witnesses' opinions).

In response, Defendant relates that O'Hallaran testified that in order to conduct an origin and cause investigation of the fire, the building and scene must be inspected. O'Hallaran, as part of conducting a post-fire investigation, inspects the electrical systems and gas systems to seek to determine an area of origin and to eliminate potential causes for the fire. O'Hallaran also interviews the owner(s) of the building to help determine the cause of the fires. In this case, O'Hallaran interviewed Plaintiff Eid Abu–Hashish, the building's owner. Mr. Abu–Hashish informed O'Hallaran that he was the only one with a key to the building, that there had been no prior fires in the building, nor had there been any break-ins to the apartments concerned. O'Hallaran also reviewed Fire Marshall Marcucci's fire report in an effort to review the fire department's fire fighting efforts.

In regards to Plaintiffs' claim that O'Hallaran did not collect any samples for testing, Defendant explains that O'Hallaran did not investigate the fire until three weeks after it had occurred. O'Hallaran stated that, based on his experience, taking debris for sampling at such time would have undoubtedly proven fruitless.

O'Hallaran's observation of the scene allowed him to conclude that there was no electricity, natural gas or appliance in the area of fire origin. He testified that the burn patterns on the third floor showed that the burning was not confined to the bathtub, but rather was all around the tub. He also observed inconsistent burn patterns on the kitchen sink.[4] While he observed evidence of smoking-related materials in the second and third floor apartments, including lighters and cigarette butts, O'Hallaran explained that the burn patterns observed on the second floor showed heavy burning on the south wall of the dining room all the way down to floor level, which was in the form of a "V" pattern. This was consistent with a fuel load, such as a chair, located on the floor. O'Hallaran noted that there was no electricity or natural gas or any mechanical appliance in the area of fire origin. O'Hallaran testified that an open flame had to have started the fires, and that it was possible but not probable that the fires were started accidentally. O'Hallaran concluded, based on his examination of the entire fire scene, that at the same time there were two separate, unconnected incendiary fires in separate rooms on the second and third floors. (*See* O'Hallaran Dep. at pp. 55, 72, 73.)

Marcucci's report notes that he interviewed Battalion Chief Davis, the fire incident commander, and that he inspected the heating and air conditioning systems as well as the hot water heater and cooking equipment. He found that none were a factor in starting the fire. He reached the same conclusion regarding the gas service and electrical system. He observed no evidence of cigarettes, smoking materials, lighters or matches at the point of origin. He did not smell any odor of an accelerant. Marcucci eliminated all accidental causes. Based on the burn patterns, Marcucci determined that there was only one fire, which originated along the

---

**4.** O'Hallaran also indicated that based upon the burn patterns he observed on the third floor kitchen's metal sink, a liquid accelerant may have been used in or around the area of fire origin on the third floor.

south wall of the dining room of the second floor front apartment. It was his opinion that the fire was a deliberate incendiary fire caused by a person employing a hand held open flame ignition source and deliberately igniting the Class A combustible materials that were positioned along the south wall of the second floor dining room.

Plaintiffs rely on *Michigan Millers Mutual Ins. Corp. v. Benfield*, 140 F.3d 915 (11th Cir.1998) in support of their contention that O'Hallaran and Marcuccis' opinions should not be admitted. *Benfield*, however, is distinguishable. Initially, the 11th Circuit, in *Benfield*, was reviewing a trial court decision for abuse of discretion. The court was not making a *de novo* precedential finding on the issue before it. *Benfield* is also factually distinguishable. The fire expert there explained that he reached his conclusion that the fire was incendiary by eliminating all potential accidental causes and by determining that there were no other possible sources of ignition of the fire. *Id.* at 921. But the investigator in *Benfield* performed no tests and took no samples. Importantly, he eliminated, as a possible source of the fire, the chandelier that was hanging above the pile of clothes that had ignited. However, the investigator was unable to explain the methodology of how he eliminated the chandelier as a possible igniting source for the fire. The court noted that the witnesses had testified that the chandelier had been seen flickering on occasion prior to the fire. The expert concluded that someone had poured lamp oil over a pile of clothes and set the clothes on fire. However, he admitted that he did not know whether the lamp oil bottle to which he was referring contained any lamp oil at the time of the fire. The expert admitted that he had no scientific basis for his opinion.

Contrary to the expert in *Benfield*, O'Hallaran and Marcucci, as explained *supra*, were able to provide adequate methodological explanations based on relevant evidence (*e.g.*, burn patterns) as to how they reached their conclusions that the fire(s) was incendiary. Fundamentally, and respectfully, the court finds that the points relied on by Plaintiffs are matters of witness credibility not admissibility.

## CONCLUSION

In view of the foregoing, Plaintiffs Motion in Limine and for Partial Summary Judgment is denied.