# United States Court of Appeals
## For the First Circuit

No. 05-2826

UNITED STATES OF AMERICA,

Appellee,

v.

VÍCTOR R. VARGAS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

Before

Torruella, Lynch, and Lipez,
Circuit Judges.

Charles P. McGinty, Federal Defender Office, for appellant.
Randall E. Kromm, Assistant United States Attorney, with whom
Michael J. Sullivan, United States Attorney, was on brief, for
appellee.

December 22, 2006

**TORRUELLA**, **Circuit Judge**. On June 13, 2001, the defendant-appellant (the "defendant") applied for a United States passport. Thereafter, the defendant was charged by a federal grand jury in a three-count indictment with making a false statement in a passport application, in violation of 18 U.S.C. § 1542; misuse of a social security number, in violation of 42 U.S.C. § 408(a)(7)(B); and possession of an unlawful identification document with intent to defraud the United States, in violation of 18 U.S.C. § 1028(a)(4). After a two-day trial, a jury convicted the defendant on all three counts.

The defendant now appeals his conviction on the ground that the district court improperly admitted expert testimony identifying the defendant as someone other than the person listed on the passport application on the basis of fingerprint analysis. After careful consideration, we affirm the conviction because we conclude that the district court did not err in admitting the expert testimony.

## I. Factual Background

On June 13, 2001, a man identifying himself as Samuel Ortiz submitted an application for a United States passport ("the application") at a post office in Dorchester, Massachusetts. The application indicated that the applicant Samuel Ortiz was a United States citizen born in Puerto Rico on May 24, 1963. The applicant signed the name "Samuel Ortiz" on the application in the presence

-2-

of the window clerk and submitted supporting documents, including a Puerto Rican birth certificate and a Massachusetts identification card bearing the applicant's picture, both under the name "Samuel Ortiz."  The clerk accepted the application and forwarded it for processing.

The application was reviewed at the National Passport Center in Portsmouth, New Hampshire by a passport specialist who testified at trial that aspects of the application led her to believe it was fraudulent.[1]  She forwarded it to a fraud program manager in the Boston Passport Agency.  The program manager testified that she also observed indications of fraud and sent a letter to the applicant requesting additional documentation.  She received no response, so she referred the application for investigation by the Diplomatic Security Service ("DSS"), a law enforcement branch of the United States Department of State responsible for passport and visa fraud investigation.

On March 5, 2003, two DSS officers went to the address provided on the Massachusetts identification card submitted with the application -- an address different from the one written on the application.  The agents identified themselves to the woman who answered the door and, showing her the picture that had been

---

[1]  The passport specialist testified that she suspected fraud because the picture identification card and the birth certificates submitted with the application were recently issued, and because Ortiz printed his signature, which she thought was inconsistent with a Puerto Rican education.

submitted with the passport application, asked to see the person depicted in the picture. The woman led the agents inside the apartment to a man who one of the agents identified at trial as the defendant.[2] The agents questioned the man about the application and accompanying photograph. The man denied submitting the application, telling the agents that his name was Víctor Vargas ("Vargas") and that he was from the Dominican Republic. Vargas gave his birth date as July 25, 1960, and provided the names of his parents.

The agents requested that Vargas provide identification. Vargas responded that he did not have any with him, but that he might have identification at his mother's house. The agents offered to take Vargas to his mother's house to get the identification, and asked if they could take his fingerprints. Vargas provided two sets of fingerprints. He then went with the agents to the address he had given as his mother's home. The agents found no one at that location.

An investigation revealed that the Bureau of Citizenship and Immigration Service had an alien file ("A-file") for Víctor Vargas, born in the Dominican Republic on July 25, 1960. The date

---

[2] At trial, the agent testified that during this encounter, he noticed that the man they questioned had a mole on his left earlobe matching that shown in the picture submitted with the passport application. On cross-examination, the agent acknowledged that he did not mention the identifying mole in his contemporaneous notes of the March 5, 2003 meeting.

of birth and names of parents on file matched those provided by Vargas to the agents in March 2003.  The A-file established that Vargas had been admitted to the United States as a legal permanent resident in December 1990 and remained a legal permanent resident in June 2001, when the passport application was submitted.  The A-file contained an index fingerprint for Víctor Vargas.

Investigators also discovered that the passport application submitted in June 2001 contained four latent fingerprints.  The government conducted fingerprint analysis comparing the fingerprints obtained by the agents in March 2003 with the prints from Vargas's A-file and the latent prints from the passport application.  The analysis revealed that the fingerprints obtained by the agents matched both the fingerprint in Vargas' A-file and the latent prints lifted off the passport application.

The government then brought charges against the defendant on the theory that he had fraudulently submitted the passport application under the name "Samuel Ortiz," when he was really Víctor Vargas.

At trial, the defendant took the position that his name was Samuel Ortiz and that he had submitted a truthful passport application.  To contradict this, the government sought to introduce the expert testimony of Thomas Liszkiewicz, a senior fingerprint specialist with the Department of Homeland Security ("DHS").  Liszkiewicz had analyzed the fingerprints at issue in

this case and, on the basis of that analysis, identified the individual who submitted the passport application under the name Samuel Ortiz as the legal permanent resident Víctor Vargas. Several months before trial, the government notified the defendant of Liszkiewicz's proposed testimony and provided him with a report of Liszkiewicz's conclusions. The government also made the passport application available to the defendant for independent analysis. The defendant did not request a hearing on the admissibility of Liszkiewicz's fingerprint testimony nor did he make any pre-trial motions with respect to Liszkiewicz's proposed testimony.

At trial, Liszkiewicz first testified about his qualifications. Liszkiewicz stated that he had been a senior fingerprint specialist at the DHS for two and a half years. He had previously spent nineteen to twenty years as a fingerprint examiner for the Wilmington, Delaware police department. Liszkiewicz testified that, as part of his training while with the Delaware police, he took courses and attended conferences on fingerprint identification methods, including two forty-hour FBI-sponsored courses in basic and advanced fingerprint comparison. He also received training as an intern to court-accepted fingerprint examiners in Delaware. Liszkiewicz testified that he is certified as a fingerprint examiner in Delaware and has served there as an instructor and trainer of fingerprint identification. He stated

that he has also been certified by the Forensic Document Lab at the DHS.  Liszkiewicz also testified that he has performed "hundreds of thousands" of fingerprint comparisons and provided expert testimony on more than one hundred occasions.

After Liszkiewicz testified about his background in fingerprint analysis, the government moved to qualify Liszkiewicz as an expert.  The defendant objected to Liszkiewicz's qualifications.  The judge did not rule on that objection, and the defendant appears to have reserved the objection for cross-examination.  Before allowing the prosecution to proceed, the court briefly addressed the jury, discussing the court's role in admitting expert testimony but also noting the jury's independent responsibility to consider "whether you think [the expert's] qualifications are sufficient to persuade you that he can give this opinion about fingerprints in this case."

Liszkiewicz went on to explain certain terminology and procedures of fingerprint identification.  He described to the jury the difference between "inked" prints, produced intentionally to "reproduce" the patterns on the fingers, and "latent" fingerprints, obtained from objects that a person touches.  He described the "analysis, comparison, evaluation and verification," or "ACEV," method of fingerprint comparison he had been trained to use to determine whether two fingerprints were made by the same person.  Liszkiewicz explained that this method requires the analyst to

first ensure that the prints involved are sufficiently clear to observe their characteristics, and if so, to compare the prints by looking at both their individual characteristics and the overall pattern. The analyst looks for matching characteristics and patterns and identifies any points of difference between the prints. An observation of at least eight matching characteristics and no unexplainable points of difference is necessary to indicate that two prints come from the same person. If the reviewer believes a match has been identified, she submits the conclusion to another examiner for verification.

Liszkiewicz then testified to the comparisons he performed in the analysis at issue. First, he described a comparison of latent prints found on the passport application to the prints obtained by the agents in March 2003. Of the four latent prints found on the application, Liszkiewicz described his comparison of two of them -- a left and right thumb print. He used "chalks" of the latent and inked prints for both the left and right thumb, and marked five matching characteristics to explain to the jury. He explained that he had chosen five characteristics for illustrative purposes, but had found a larger number of points of identity between the prints -- "into the twenties" with respect the left thumb print. He testified that he had found no points of difference between the latent and inked fingerprints. On the basis

of his analysis, he concluded that the latent and inked thumb prints "were made by one and the same individual."

Liszkiewicz further testified that he compared the index fingerprint obtained by the agents to the corresponding fingerprint in the Vargas A-file. Liszkiewicz noted the presence of a "tented arch," a particularly significant characteristic because it appears in "less than five percent, more like three to two percent of the population." He testified that other matching characteristics for the index finger "were positively identified." On the basis of his comparison, he testified that the two prints "were made by one and the same individual to the exclusion of all others."

The defendant cross-examined Liszkiewicz on several aspects of his testimony. The defendant questioned him about his educational background and experience. Liszkiewicz acknowledged that he did not have an undergraduate degree or an educational background in science. The defendant asked whether Liszkiewicz had preserved written notes of his analysis in this case, to which Liszkiewicz responded that, consistent with the policies of his department, he had not. The defendant also asked Liszkiewicz about his reliance on visual inspection to compare fingerprints. In response, Liszkiewicz testified without objection that the visual inspection method he used was consistent with his training. The defendant also questioned Liszkiewicz about the quality of the prints used. Liszkiewicz testified that while it was his usual

practice to compare fingerprints using "the best possible image available," he had used a fax copy of the fingerprints from the A-file for Vargas because it was sufficiently clear. The defendant challenged Liszkiewicz's reliance on eight matching characteristics to find a match in fingerprints, pointing out that other countries require twelve to sixteen matching characteristics. Finally, the defendant asked Liszkiewicz if he knew of statistical studies on the reliability of fingerprint identification. The defendant asked specifically about studies establishing the "premise" that fingerprints are unique, the "relative frequencies" of individual characteristics in the population, and the probability that a given group of characteristics might occur in multiple individuals. Liszkiewicz said that he was unable to identify specific studies addressing these points.

After Liszkiewicz's cross-examination, the defendant moved, without further explanation, "to exclude Liszkiewicz's testimony." The district court denied the motion. A redirect and re-cross followed, after which the government rested its case. At this point, the defendant requested a sidebar, during which he renewed his motion to exclude the expert testimony, stating:

> Your Honor, I renew my motion to strike the testimony of this witness on the grounds that while he testified to common fingerprint characteristics, he is without knowledge, information or expertise about the significance of common characteristics. That is an extraordinary omission in the offering of identification or for identification

-10-

testimony by this witness. . . . [W]ithout the ability to testify as to why those characteristics are meaningful, based on his experience, training and education, his testimony to the jury that there was identity between those prints is without foundation, would not survive any Daubert standard in the world because he can't testify to whether these standards of identification are based on any identifiable science, are in any way tested by -- in the literature. There's utterly no foundation for this.

The government responded that fingerprint identification had been "accepted science for years in courts" and that Liszkiewicz was a recognized expert with relevant training and education. The court expressed agreement with the government's position and denied the defendant's motion. The defendant then moved for a judgment of acquittal "on that ground." The district court reserved a ruling on the motion. The defendant rested his case without calling any witnesses.

In his closing argument, the defendant asked the jury to disregard Liszkiewicz's testimony, once again attacking aspects of Liszkiewicz's testimony: Liszkiewicz's ignorance about the frequence of certain fingerprint characteristics in the population, his reliance on eight matching characteristics, his method of "eyeballing" prints, and his lack of "scientific" training. After closing arguments, the district court charged the jury to independently review and consider the expert testimony in light of all the evidence presented. The jury returned a verdict of guilty on all counts.

A week after the trial had concluded, the defendant filed a written motion for judgment of acquittal and for a new trial pursuant to Federal Rules of Criminal Procedure 29 and 33, respectively. The defendant argued that Liszkiewicz's testimony was inadmissible, and for the first time in the case argued that the expert testimony failed to satisfy the requirements of Federal Rule of Evidence 702. As support for his argument he noted, among other things, that Liszkiewicz did not memorialize his fingerprint comparisons, that he used a faxed copy of a print for one of his comparisons, and that he "eyeballed" the comparisons. The defendant expressly stated that he was not challenging the admission of fingerprint evidence generally, limiting his Rule 702 argument to the adequacy of Liszkiewicz's testimony.

The district court denied this motion, holding that Liszkiewicz was qualified as an expert in fingerprint identification, that his "data and methodology . . . were within the mainstream of forensic fingerprint technology," and that any flaws in his opinion went to the weight of the evidence, rather than its admissibility.

## II.  Discussion

On appeal, the defendant argues Liszkiewicz's testimony failed to meet three criteria required by Rule 702 for the admission of expert testimony: that a witness be "qualified as an

expert by knowledge, skill, experience, training, or education";[3] that expert testimony be "based upon sufficient facts or data"; and that the expert "appl[y] the principles and methods of [fingerprint analysis] reliably to the facts of the case."  Fed. R. Evid. 702.

## A.  Gate-keeping Under <u>Daubert</u>

Under Rule 702,

> [i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

<u>Id.</u>  This rule imposes a gate-keeping role on the trial judge to ensure that an expert's testimony "both rests on a reliable foundation and is relevant to the task at hand."  <u>Daubert</u> v. <u>Merrell Dow Pharms., Inc.</u>, 509 U.S. 579, 597 (1993); <u>see also</u> <u>Kumho Tire Co.</u> v. <u>Carmichael</u>, 526 U.S. 137, 147-49 (1999) (holding that <u>Daubert</u> applies to all expert testimony).  Expert testimony must be

---

[3]  On appeal, the defendant's "specific" argument is that Liszkiewicz "failed to meet two of the criteria for admission required by Fed. R. Evid. 702; his testimony was not based upon sufficient data and he had not applied the relevant methods reliably to the facts of the case."  The defendant does not explicitly articulate a challenge to Liszkiewicz's qualifications, but he devotes part of his brief to the argument that Liszkiewicz "demonstrated little understanding of fingerprint analysis methodology."  We understand this argument to go to Liszkiewicz's qualifications, and we will address it as such.

reliable, such that "the reasoning or methodology underlying the testimony is scientifically valid and . . . that reasoning or methodology properly can be applied to the facts in issue." Daubert, 509 U.S. at 592-93. The proffered expert testimony must also be relevant, "not only in the sense that all evidence must be relevant, but also in the incremental sense that the expert's proposed opinion, if admitted, likely would assist the trier of fact to understand or determine a fact in issue." Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co., 161 F.3d 77, 80 (1st Cir. 1998) (citing Daubert, 509 U.S. at 591-92) (citations omitted).

The inquiry under Rule 702 is a "flexible one." Daubert, 509 U.S. at 594. The trial court enjoys broad latitude in executing its gate-keeping function; there is no particular procedure it is required to follow. See id. The Supreme Court has emphasized the importance of such broad latitude, noting that, without it, the trial court "would lack the discretionary authority needed both to avoid unnecessary 'reliability' proceedings in ordinary cases where the reliability of an expert's methods is properly taken for granted, and to require appropriate proceedings in the less usual or more complex cases where cause for questioning the expert's reliability arises." Kumho Tire, 526 U.S. at 152.

## B. Liszkiewicz's Qualifications

The defendant argues that Liszkiewicz's inability to answer questions about the significance of common fingerprint

-14-

characteristics renders him unqualified to offer expert testimony to the jury. Because the defendant objected to Liszkiewicz's testimony on this basis at trial, this argument was preserved, and we review the district court's decision to accept Liszkiewicz's qualifications for abuse of discretion. See United States v. Díaz, 300 F.3d 66, 74 (1st Cir. 2002)(citing Gen. Elec. Co. v. Joiner, 522 U.S. 136, 138-39 (1997)).

Before accepting expert testimony, a district court must determine that a witness is "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. "It is well-settled that 'trial judges have broad discretionary powers in determining the qualification, and thus, admissibility, of expert witnesses.'" Diefenbach v. Sheridan Transp., 229 F.3d 27, 30 (1st Cir. 2000) (quoting Richmond Steel Inc. v. Puerto Rican Am. Ins. Co., 954 F.2d 19, 20 (1st Cir. 1992)).

Liszkiewicz's qualifications as a fingerprint analyst are considerable. Liszkiewicz testified that he has worked in the field of fingerprint analysis for over twenty years. He has completed two FBI courses in fingerprint comparison, as well as other training courses. He is a certified fingerprint examiner and police instructor. He has been deemed qualified as a fingerprint expert in over one-hundred previous cases. Moreover, there is no evidence that an understanding of statistical studies on the

significance of recurring fingerprint characteristics is required by any standard of fingerprint identification analysis.

It is not required that experts be "blue-ribbon practitioners" with optimal qualifications. United States v. Mahone, 453 F.3d 68, 71 (1st Cir. 2006). Given the evidence of Liszkiewicz's training, experience, and skill, the district court did not abuse its discretion in finding him sufficiently qualified to testify as an expert on fingerprint comparison, as that ruling fell within the broad purview of the trial court's discretion.

## C. Sufficiency of Liszkiewicz's Data and the Reliability of Liszkiewicz's Application of Fingerprint Analysis Methods

### 1. Standard of Review

The defendant also raises an argument under the first and third prongs of Rule 702 arguing that Liszkiewicz's testimony was not based upon sufficient facts or data and that he did not apply the principles and methods of fingerprint analysis reliably to the facts of this case. However, the defendant failed to object to Liszkiewicz's testimony on these grounds at trial, therefore our review is limited to plain error review.

Rule 103(a)(1) of the Federal Rules of Evidence requires that an objection to the admission or exclusion of evidence be timely and specific in order to preserve the issue for appeal. This mandate for specificity requires the objecting party to object with the degree of detail that will adequately apprise the trial court of the basis of the objection, unless the specific ground is

-16-

apparent from the context.  See Fed. R. Evid. 103(a)(1); see also United States v. Carrillo-Figueroa, 34 F.3d 33, 39 (1st Cir. 1994) ("Unless the basis for objection is apparent from the context, the grounds for objection must be specific so that the trial court may have an opportunity to address the claim later sought to be presented on appeal."); United States v. Walters, 904 F.2d 765, 769 (1st Cir. 1990) ("The reason for [the specificity] requirement is to alert the trial court and the other party to the grounds of the objection so that it may be addressed or cured.").

As with other bases for objecting, "litigants must raise a timely objection to the validity or reliability of expert testimony under Daubert in order to preserve a challenge on appeal to the admissibility of that evidence." Díaz, 300 F.3d at 74. However, "[n]othing in [Rule 103] precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the court." Fed. R. Evid. 103(d). Thus, we review a claim of error not properly preserved below for plain error. Díaz, 300 F.3d at 74-75.

Our review of the record indicates that the defendant objected to the admission of Liszkiewicz's expert testimony three times. His first objection was to Liszkiewicz's qualifications. The second objection gave no explanation of his grounds for objecting; he stated simply and without elaboration, "I move to exclude [Liszkiewicz's] testimony." The third and final objection

referred to Liszkiewicz's qualifications and, more generally, to the scientific foundation of fingerprint analysis. None of the objections made reference to the sufficiency of Liszkiewicz's facts or his application of fingerprint analysis methods.

The defendant's first objection went to qualifications, and thus clearly did not preserve these issues for appeal. The second objection was a general objection. It did not specify any grounds for objecting and followed a lengthy cross-examination covering many subjects, including aspects of Liszkiewicz's educational background, training, and experience; the methods he employed for his analysis of the fingerprints; the memorialization of his analysis; the accuracy of fingerprint analysis generally; the rigor of the standards he employed as compared to standards employed in other countries; the reliability of fingerprint analysis as compared to DNA analysis; and his knowledge of statistical studies on the reliability of fingerprint identification. On the heels of such varied questioning, it cannot be said that the <u>specific</u> grounds of the defendant's objection were "apparent from the context," such that Rule 103(a) would be satisfied.[4]    Thus, the defendant's second objection could not

_____

[4]    Although the defendant's cross-examination of Liszkiewicz was itself limited to the expert's qualifications, methodology, the basis for his ultimate opinion, and the reliability of the fingerprint analysis in general, subjects that are all governed by Rule 702, more than 'I move to exclude his testimony' after a wholesale attack on an expert's testimony is necessary to advise the trial court of an objection based on the sufficiency of facts

advise the district court that the defendant was raising a challenge specifically to the sufficiency of Liszkiewicz's data or to the application of fingerprint analysis methods under Rule 702.

The defendant's third objection likewise failed to advise the district court of these challenges to Liszkiewicz's testimony. This objection addressed Liszkiewicz's qualifications and the scientific foundation of fingerprint analysis. Although it was more elaborate than his first insofar as the defendant articulated some grounds for the motion to strike, it did not call the district court's attention to Liszkiewicz's data or his application of fingerprint analysis methods.[5] In fact, both the district court and the government understood the defendant to be challenging the foundation of fingerprint analysis generally and Liszkiewicz's qualifications as an expert.[6] Because the defendant failed to make

_____

employed by the expert and his application of appropriate methods. See Díaz, 300 F.3d at 75 (noting that because "Rule 702 encompasses an array of expert witness issues," an objection on the basis of one or more of its criteria must advise the court of the specific Rule 702 provision being challenged).

[5] Although the defendant did refer briefly to Daubert, he did not articulate how the Daubert standard relates to the specific challenges he brings to our attention on appeal. See Díaz, 300 F.3d at 75 (finding the defendant's references to "Daubert" and "competency" to be "woefully deficient for the purposes of advising the district court that [the defendant] was raising a challenge to the reliability of the experts' methods and the application of those methods under 702").

[6] In response to Vargas's objection, the following colloquy took place:

    THE GOVERNMENT: Fingerprint examination has been an accepted

-19-

a specific objection based on the sufficiency of the data Liszkiewicz employed or his application of fingerprint analysis methods, and no such basis of objection could be considered clear from the context, the defendant's objections at trial failed to adequately preserve these challenges to the admissibility of Liszkiewicz's expert testimony.  We review these claims for plain error.

## 2.  Plain Error Analysis

The defendant must demonstrate "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings" to establish plain error in the admission of expert testimony.  United States v. Lemmerer, 277 F.3d 579, 591 (1st Cir. 2002)(quoting United States v. Gómez, 255 F.3d 31, 37 (1st Cir. 2001))(internal quotation marks omitted).  Nothing of that sort is implicated here.

### a.  Sufficiency of the Data

The defendant argues that Liszkiewicz's testimony was not based on sufficient facts or data because he used a faxed image of

science for years in courts.  He has been accepted as an expert. He has official training and background and education to testify and give his opinion as to how he made this identification.

THE COURT: Yes. The motion is denied. It has a certain plausibility, but it's denied.

the fingerprint in Vargas's A-file to compare that print with the fingerprints obtained by the agents rather than the original print or a photograph of the original.

Liszkiewicz provided unrebutted testimony that the ACEV method of fingerprint comparison required that the analyst ensure that the prints being analyzed are sufficiently clear to observe their characteristics. He also testified that the faxed image of fingerprint was sufficiently clear to make a comparison. While he did state that it was his practice to try to use the "best possible image" of a fingerprint for comparisons, his failure to do so with respect to one of the prints goes to the weight, not the admissibility, of his testimony. See Int'l Adhesive Coating, Co. v. Bolton Emerson Int'l, 851 F.2d 540, 545 (1st Cir. 1988) ("When the factual underpinning of an expert's opinion is weak, it is a matter affecting the weight and credibility of the testimony -- a question to be resolved by the jury."). There was no error, much less plain error, in the district court's finding that Liszkiewicz's testimony was based on sufficient facts.

### b. Reliability of Application of Methodology

The defendant also contends that Liszkiewicz's testimony should have been excluded because he did not apply the principles and methods of fingerprint analysis reliably to the facts of this case. He first argues that the district court "abdicated its responsibility to assure that the witness applied the appropriate

-21-

methods of his field reliably to the facts of the case" and that it ultimately erred in finding that Liszkiewicz had applied the accepted methods of fingerprint analysis reliably.

The defendant claims that the court should have concluded that Liszkiewicz's testimony was inadmissible because he failed to memorialize his original analysis with notes, he based one of his comparisons of a faxed image of a fingerprint, he "eyeballed" the fingerprints as a means of identification, and he recited an eight-point standard but only identified five matching characteristics as to two comparisons and only one matching point for the last comparison in his testimony to the jury.

The district court's responsibility under Rule 702 and Daubert is only to find that the expert's conclusion has "a reliable basis in the knowledge and experience of [the expert's] discipline." Daubert, 509 U.S. at 592; see also Ruiz-Troche, 161 F.3d at 85 ("[Daubert] demands only that the proponent of the evidence show that the expert's conclusion has been arrived at in a scientifically sound and methodologically reliable fashion."). We have specifically noted that "Daubert does not require that the party who proffers expert testimony carry the burden of proving to the judge that the expert's assessment of the situation is correct." Ruiz-Troche, 161 F.3d at 85. Once the district court finds that the expert's methodology is reliable, the expert is allowed to testify as to the inferences and conclusions he draws

from it.  <u>United States</u> v. <u>Mooney</u>, 315 F.3d 54, 63 (1st Cir. 2002)

("We . . . note that Rule 702 specifically allows qualified experts to offer their opinions, a testimonial latitude generally unavailable to other witnesses.").

The record shows that Liszkiewicz explained that the methods and procedures he employed in analyzing fingerprint identity required him to find at least eight matching characteristics and no unexplainable points of difference in order to determine that two fingerprints came from the same person. Liszkiewicz testified that he examined every set of fingerprints personally and that each examination yielded sufficient points of identity to determine that they belonged to the defendant. He stated that the comparisons yielded no characteristics of difference, and emphasized the significance of finding more than twenty points of identity as to one comparison and a matching "tented arch" characteristic as to another. Liszkiewicz stated that his use of only five points was for illustrative purposes, and he never suggested that he relied on fewer than eight points of identity in declaring a match. He also testified that while getting the "best possible image" was important, the faxed image of the print was sufficiently clear to make a comparison. We find this testimony more than sufficient to support the district court's determination that Liszkiewicz's conclusions had a reliable basis in the knowledge and discipline of fingerprint analysis.

This Court has made clear that

> [a]s long as an expert's scientific testimony rests upon good grounds, based on what is known, it should be tested by the adversary process -- competing expert testimony and active cross-examination -- rather than excluded from jurors' scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies.

Ruiz-Troche, 161 F.3d at 85 (internal quotation marks and citations omitted); see also Daubert, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

We note that the defendant questioned Liszkiewicz at length on all of the alleged deficiencies in his testimony that he challenges on appeal. He presented the jury with his view of the inconsistencies and weaknesses in Liszkiewicz's testimony. Moreover, the district court below instructed the jury that, notwithstanding the court's decision to admit the evidence, it had the "separate responsibilit[y] of determining whether [it] believe[d] him and his opinions, in particular, based on [its] judgment of his qualifications as a fingerprint analyst and expert." In light of the district court's cautionary instructions to the jury, the defendant's vigorous cross-examination of Liszkiewicz, and his argument to the jury at closing that the fingerprint evidence should not be credited, we are confident that

the jury could draw its own conclusions as to the strength of the support for Liszkiewicz's opinions.

Thus, the defendant is unable to establish the first prong of the plain error test: there was no error in the district court's assessment of the reliability of Liszkiewicz's application of fingerprint analysis methodology to the facts of this case.

### III. <u>Conclusion</u>

For the reasons stated above, we affirm.

**<u>Affirmed</u>**.