Axel ORTIZ–SEMPRIT,
et al, Plaintiff(s)

v.

The COLEMAN COMPANY, INC.,
et al, Defendant(s).

Civil No. 99–1934(JAG).

United States District Court,
D. Puerto Rico.

Feb. 2, 2004.

Cheryl Charles–Smith, Howard Charles, Howard H.B. Charles, Charles & Charles Law Offices, Ricardo L. Rodriguez–Padilla, Nachman, Guillemard & Rebollo, San Juan, PR, for Plaintiffs.

Bruce J. McGiverin, Hato Rey, PR, James H. Heller, Cozen and O'Connor, Saundra J. Godina, Philadelphia, PA, Kenneth R. Lang, Lynn D. Preheim, Morrison & Hecker, LLP, Matthew D. Flesher, Morrison & Hecker, LLP, Ronald P. Williams, Morrison & Hecker, LLP, Wichita, KS, for Defendants.

Jose Luis Fernandez–Esteves, Old San Juan, PR, for Vanguard Ins. Co.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

Pending before this Court is defendants' Coleman Powermate Inc. and The Coleman Company Inc. (hereinafter "Defendants") Motion under *Daubert*[1] to Exclude Plaintiffs' Three Expert Witnesses (Docket No. 102). Defendants subsequently submitted a motion citing additional authority in support of its motion to exclude (Docket no. 106) Plaintiffs Axel Ortiz Semprit, Patricia Collazo Rivera, the Conyugal Partnership Ortiz–Collazo, Jonathan Ortiz–Collazo, Anthony Ortiz–Collazo and Yanishka Ortiz–Collazo (hereinafter "Plaintiffs") have timely filed two separate oppositions with respect to experts Dr. Lewis Mifsud (Docket No. 107)and Mr. Herbert T. Bogert (Docket No. 108). Plaintiffs did not file an opposition to the Motion to Exclude with respect to Dr. Robert J. Cunitz. For the reasons set forth below, this Court hereby GRANTS defendants' Motion under *Daubert* to Exclude Plaintiffs' Three Expert Witnesses.

### *Factual Background*

This is a products liability case involving a Coleman Powermate model PM54–5000 electric generator bought in September of 1989, shortly after Hurricane Hugo. On September 26, 1998, plaintiff Collazo–Rivera attempted to refuel the generator, whereupon a fire ensued and both plaintiff Collazo–Rivera and her son Jonathan Ortiz–Collazo received serious burn injuries. Plaintiffs filed their complaint on August 18, 1999, and subsequently amended the complaint on December 3, 1999 and on July 27, 2000. Plaintiffs claim that the generator was defectively designed and lacked adequate warnings. While plaintiffs' initial theory was that the fire was caused by auto-ignition, they subsequently introduced a second theory that the fire was caused by an electrostatic discharge that occurred during the refueling process.

### *Discussion*

I.  *Gatekeeping Function*

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589–95, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the Supreme Court asserted that courts perform a gatekeeping role in regulating the admission of expert testimony under Fed. R.Evid. 702. The proffered expert testimony is evaluated for both reliability and relevance. *Daubert* at 591–595, 113 S.Ct. 2786. The review for reliability takes into consideration several factors; the verifiability of the expert's theory or technique, the error rate inherent therein, whether the theory or technique has been published and/or subjected to peer review, and its level of acceptance within the scientific community. *Daubert* at 589–595, 113 S.Ct. 2786. As to relevance, "expert testimony must be relevant not only in the sense that all evidence must be relevant, but also in the incremental sense that the expert's proposed opinion, if admitted, likely would assist the trier of fact to understand or determine a fact in issue." *Ruiz–Troche v. Pepsi Cola of P.R. Bottling Co.,* 161 F.3d 77, 81 (1st Cir.1998). (citing Daubert, *509 U.S. at 591–92, 113 S.Ct. 2786* ). In exercising its gatekeeping function, the Court need not follow any particular procedure. *United States v. Diaz,* 300 F.3d 66, 73 (1st Cir.), (citing *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)).

---

1. *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

## II. *Dr. Lewis Mifsud*

■ Defendants question Dr. Mifsud's qualifications as an expert witness with respect to his testimony concerning consumer warnings. It is clear from the record and the depositions of Dr. Mifsud that, though he may be qualified to offer expert opinions as to the cause and origin of the fire given his educational and professional background, he does not possess any background experience or education to qualify him as an expert in consumer warnings. In addition, Dr. Mifsud did not perform any research or testing pertaining to the adequacy of the generator's warnings or the likely reaction of plaintiff to any additional warnings. Therefore, this Court finds that Dr. Mifsud is not qualified to testify as to the adequacy of the consumer warnings.

■ Defendants also argue that Dr. Mifsud's opinion's regarding static electricity should be precluded because the opinions are unsubstantiated and untested. To support their argument, defendants cite numerous occasions during Dr. Mifsud's deposition in which he fails to provide a reliable basis for his opinion. Plaintiffs' opposition to defendants' arguments rests on the premise that testing is not a mandatory requirement for the admissibility of an expert's testimony, and that Dr. Mifsud's credentials are impeccable. This, however, is not sufficient. "It is the proponent of the challenged evidence who carries the burden of proof ... not to prove that his or her expert's opinion or conclusion is correct, but that "the expert's conclusion has been arrived at in a scientifically sound and methodologically reliable fashion." " *Thorndike v. DaimlerChrysler Corp.*, 266 F.Supp 2d 172, 175 (D.Me.2003). (citing *Ruiz–Troche v. Pepsi Cola of P.R. Bottling Co.*, 161 F.3d 77, 81 (1st Cir. 1998)). From the deposition transcript, it is clear that Dr. Mifsud has not conducted prior tests or experiments on static dis-

charges, nor does he have any publications within the field. Moreover, Dr. Mifsud did not examine the generator (or similar models), did not examine the scene of the accident, did not interview plaintiffs, and finally, he conducted no testing to support his opinion, but rather arrived at it by a process of elimination. (Mifsud Dep. pp. 80–81 and 156, Docket No. 102, Exhibit "A"). The lack of foundation for Mr. Mifsud's expert opinion, as well as his general lack of knowledge when questioned as to any of the significant details of the accident, lead this Court to conclude that Dr. Mifsud's opinion is unreliable.

Therefore, Dr. Mifsud is precluded from testifying as to the adequacy of the consumer warnings and his opinions regarding static electricity.

## III. *Mr. Herbert T. Bogert*

■ Defendants question Mr. Bogert's qualifications as an expert witness as to any of the issues presented in this action. Mr. Bogert is a safety engineer. His experience in the field, however, has been mostly in the area of occupational safety in industrial settings. Although Mr. Bogert may have experience with respect to hazardous conditions and safety measures in the workplace, his background experience and education do not qualify him as an expert in consumer warnings. In addition, Mr. Bogert has not performed any specific tests nor provided reliable research as to the adequacy of the generator's warnings or of plaintiffs' possible reactions to any warnings. This Court finds, therefore, that Mr. Bogert is not qualified to testify as to the adequacy of the consumer warnings.

■ Defendants are also challenging Mr. Bogert's opinion with regards to the fire originating due to an electrostatic discharge. Plaintiffs' objections to defendants' arguments are an almost exact copy of what they were for Dr. Mifsud; in fact,

section 5 of their opposition incorrectly argues for Dr. Mifsud rather than Mr. Bogert. The general nature of plaintiffs objections fails, in both cases, to adequately establish the validity and reliability of the foundations of their expert witnesses. In the case of Mr. Bogert, plaintiffs contend that his certification for the past four years as a fire and explosion investigator by the National Fire Protection Association qualifies him as an expert in this matter. From the deposition transcripts, however, it is patently clear that Mr. Bogert lacks any foundation for his theory that an electrostatic discharge occasioned the fire. Mr. Bogert did not inspect the generator, the scene of the accident, nor did he interview plaintiffs in this case. Mr. Bogert's lack of specific knowledge is not limited to the circumstances that surrounded the accident. Rather, Mr. Bogert was unable to state whether the four conditions listed in the National Fire Code, Volume 14, which he relied upon for his opinion, were fulfilled. Such lack of knowledge and preparation on behalf of an expert is disturbing, and shows that Mr. Bogert's opinions are not predicated upon any available facts, studies, or testing. "Nothing requires a district court to admit opinion evidence which is connected to existing data only by the ipse dixit of the expert." *Ruiz–Troche v. Pepsi Cola of P.R. Bottling Co.,* 161 F.3d 77, 81 (1st Cir.1998). Therefore, this Court must exclude Dr. Bogert's testimony for unreliability.

### IV. *Dr. Robert J. Cunitz*

■ Defendants question Dr. Cunitz's qualifications as an expert witness with respect to his testimony concerning consumer warnings on two grounds. First, because it relies on the opinions of Dr. Mifsud and Mr. Bogert, both of which are unreliable. Second, because his testimony is not bolstered by any scientific methodology or supporting data to support his conclusions. Plaintiffs did not present an opposition to defendants motion to exclude Dr. Cunitz's testimony. Therefore, this Court will decide based on defendants' motion and the evidence that has been submitted in this matter.

From Dr. Cunitz's deposition testimony, it is clear that he lacks the necessary background and preparation to render an expert opinion in this matter. Dr. Cuntiz admitted having virtually no knowledge of static electricity ignition as pertains to gasoline refueling or to any generator, or more specifically as to the generator in question. Moreover, he has no evidence that defendants should have been aware of this danger, if in fact it exists, nor has he performed any testing or research to support his conclusion. Finally, Dr. Cunitz like the other expert witnesses in this case, has not examined the generator, done any comparisons between that generator's warnings and those of others, and has not interviewed the plaintiffs. Finally, this Court is disturbed by Dr. Cunitz's lack of candidness on the subject of his exclusion as an expert witness in numerous previous court proceedings. Given the record before it, this Court cannot but find that Dr. Cuntiz's expert opinion be precluded in this case.

### V. *Rule 701 and 403*

■ Plaintiffs' final argument as to the admissibility of their experts' opinions is that, even if they were found lacking under Rule 702, they would be admissible under Rule 701 as "Opinion Testimony of Lay Witnesses". Although this rule may allow an expert to provide both expert and opinion testimony, Rule 701 may not be used as the means to render expert testimony that is otherwise inadmissible under Rule 702.[2] If this were the case, however, the

---

**2.** The Court notes that the 2000 Amendments

of the Federal Rules of Evidence state: "Rule

Court's role as gatekeeper would be subverted by the back-door entry of otherwise inadmissible testimony. Therefore, this Court will not admit the experts' opinion testimony under Rule 701.

### Conclusion

For the reasons discussed above, this Court hereby **GRANTS** defendants' Motion under Daubert to Exclude Plaintiffs' Three Expert Witnesses. Therefore, the expert testimony of Dr. Lewis Mifsud, Mr. Herbert T. Bogert, and Dr. Robert J. Cunitz is excluded.

IT IS SO ORDERED.

701 has been amended *to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple* expedient of proffering *an expert in lay witness clothing."* (Emphasis supplied.)