# United States Court of Appeals
## For the First Circuit

No. 05-2797

GARY D. PELLETIER,

Plaintiff, Appellant,

v.

MAIN STREET TEXTILES, LP; TYNG TEXTILES, LLC;
CHARLES MCANSIN ASSOCIATES, LP; MCDONNA, LLC;
JOAN FABRICS CORPORATION,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Boudin, Chief Judge,
Lynch, Circuit Judge,
and Schwarzer,[*] Senior District Judge.

Kathy Jo Cook, with whom Keches & Mallen, P.C. was on brief,
for appellant.
Michael A. Fitzhugh, with whom Barbara L. Horan and
Fitzhugh, Parker & Alvaro, LLP were on brief, for appellees.

December 4, 2006

---

[*] Of the Northern District of California, sitting by
designation.

**LYNCH**, **Circuit Judge**.  Gary D. Pelletier brought suit in tort against Main Street Textiles, LP ("Main Street"); TYNG Textiles, LLC; Charles McAnsin Associates, LP; McDonna, LLC; and Joan Fabrics Corporation, seeking to recover for serious injuries sustained while working at a Main Street site as a rigger.  A rigger is one who specializes in the moving of very large and complicated machinery.  Pelletier was not an employee of Main Street or any of the defendants.  Rather, he worked for Three D Rigging, which had a contract with Main Street to work on site.  A jury returned a verdict for the defendants, and the district court denied Pelletier's motion for a new trial.

On appeal, Pelletier argues that a new trial is warranted because the district court improperly excluded two OSHA safety standards proffered by Pelletier and limited the testimony of one of his experts.  Finding no abuse of discretion and, in any event, no prejudice to Pelletier from these rulings, we affirm the judgment of the district court.

I.

In October 2000, Main Street hired Three D Rigging to move textile equipment and machinery as part of its relocation out of the "old mill," a facility that was more than 120 years old. Pelletier, a rigger with twenty years' experience, was employed by Three D Rigging, and he worked on the Main Street job from October 2000 through July 2001.

On July 31, 2001, while working at the old mill, Pelletier was seriously injured when the top of a ten-foot-high, 460-pound steel A-frame that he was moving with a forklift fell and struck him on the head. The impact caused a fracture dislocation of the spine in Pelletier's neck, resulting in quadriplegia.

The parties dispute how the accident occurred. Pelletier, who was alone at the time, gave the following account. Pelletier had secured the A-frame to the mast of the forklift using a single strap, and he had tilted the forks of the forklift up slightly for better stability. He planned to move the A-frame across an open space, and in doing so, he needed to move the forklift from a portion of the floor covered by a metal plate to an uncovered wooden floor. Pelletier said that as the forklift moved off the plate and onto the wood floor, the forklift and A-frame began to sway. Concerned about the integrity of the uncovered wood floor, Pelletier tried to back up to the plated portion of the floor, but when he gave the forklift gas, the tires spun momentarily, then caught, causing the forklift to lurch backwards. This, in turn, caused Pelletier to be thrown forwards and to hit the tilt control lever. The lever tilted the forks downwards, causing the base of the A-frame to slide forward, until the top of the A-frame slipped over the mast of the forklift and struck Pelletier on the head.

Main Street offered a different version of events, tending to show that Pelletier had slipped while standing up to tighten the strap around the A-frame.

In January 2003, Pelletier filed a complaint in the federal district court in Massachusetts against Main Street and related corporate entities under diversity jurisdiction. The complaint alleged that Pelletier's accident was the result of the defendants' negligence and sought compensatory damages.[1]

As later developed at trial, Pelletier had two main theories of negligence. First, Pelletier alleged that Main Street had been negligent in maintaining the premises of the old mill. According to Pelletier, the deteriorated condition of the wood floor, together with the fact that much, but not all, of the floor had been covered with metal plates, caused the swaying that Pelletier had noticed and the need to back up from the wood floor onto the plated portion of the floor. Moreover, Pelletier alleged that Main Street's failure to clean up oil left on the floor by the textile equipment and to otherwise keep the floors clean caused the forklift to lurch backwards when he tried to back up.

Pelletier's alternative theory of negligence was that Main Street exercised sufficient control over the work of Pelletier

---

[1] Three D Rigging failed to carry workers' compensation insurance prior to Pelletier's accident. Lee Duby, Sr., the sole owner of Three D Rigging, filed for bankruptcy on December 15, 2003, and received a discharge on March 9, 2004.

and Three D Rigging that Main Street was responsible for ensuring the safety of that work. The Three D forklift that Pelletier had been using was not equipped with an overhead guard; such a guard would have prevented the A-frame from hitting him. According to Pelletier, Main Street had a responsibility to ensure that such guards were used, at least where there was sufficient overhead clearance to use a guard, as there was where Pelletier was moving the A-frame.

Main Street, for its part, put forward multiple defenses. First, Main Street argued that the accident could not have happened as Pelletier described, and it cast doubt both on whether the forklift could sway and lurch and on whether Pelletier could have hit the tilt control lever in the sequence of events he described. Moreover, Main Street alleged that Pelletier himself was responsible for the accident because he had failed to secure the A-frame to the forklift using a second strap.

As to the premises, Main Street asserted that Pelletier was well aware of any potential hazards, having worked at that site for some time, and that nothing about the condition of the floor made it unreasonably dangerous to work on. Main Street cast doubt on whether there was any significant amount of oil on the floor and also argued that by the time of the accident, oil was only being spilled as a result of Three D's activities and it was Three D's responsibility to clean it up.

Finally, Main Street denied having or exercising any control over Three D's rigging methods and thus any responsibility for the safety of those methods. As to the issue of overhead guards, Main Street asserted that it met whatever responsibility it had because it had raised the issue with Three D, and that it had no responsibility to act directly to prevent the use of forklifts without guards. In any event, the forklift that Pelletier was using had no guard because it was generally being used in an area without sufficient clearance for a guard; Main Street asserted that it had no reason to suspect that Pelletier would use that forklift in an area with greater clearance.

On May 5, 2005, the jury returned a verdict for the defendants, finding no negligence. On May 31, 2005, Pelletier filed a motion for a new trial, on three grounds. Pelletier argued that the district court had erred: (1) in excluding two OSHA regulations, 29 C.F.R. § 1926.20(b)(2) and (3), that provided safety standards for construction work; (2) in refusing to conduct a voir dire with his safety engineering expert in order to determine the relevance of the proffered OSHA regulations; and (3) in limiting that expert's testimony and refusing to allow the expert to testify about industry customs and practices of safety.

On September 21, 2005, the district court denied the motion for a new trial, rejecting all of Pelletier's claims of error. It found that Pelletier had not met his burden to lay an

adequate foundation for the admission of the excluded regulations, and had not shown that the regulations "were properly applicable to Main Street or relevant to the issues being tried." Further, Pelletier had failed to proffer other regulations defining the terms used in the proffered regulations, potentially leading to jury confusion. Moreover, the court held it was not required to hear Pelletier's safety expert on voir dire.

As for the limitation on the safety expert's testimony, the court explained that Pelletier's new trial motion argued that the expert "would have testified only as to industry custom and practices in general," but "during trial plaintiff's counsel proposed that [the expert] be permitted to testify with respect to which OSHA regulations were relevant to safety at the Old Mill." The court stated that it had precluded the expert from providing such testimony because it would have usurped the court's function in instructing the jury on the law. The court noted that Pelletier had then suggested that his expert "be allowed to testify about which industry customs and practices relating to safety had been violated at the Old Mill." Because the expert "had never visited the Old Mill" and had apparently based his opinions on deposition testimony and preliminary expert reports about the accident, the court found that his opinion "would have been based upon insufficient facts or data and, therefore, was inadmissible pursuant to Fed. R. Evid. 702." Finally, the court found that the

proposed evidence and testimony were "unlikely to have affected the outcome of the trial."

II.

We review rulings on the admission of evidence for abuse of discretion.  See United States v. Guerrier, 428 F.3d 76, 79 (1st Cir. 2005).  Moreover, we "disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."  Fed. R. Civ. P. 61; see also Kelley v. Airborne Freight Corp., 140 F.3d 335, 346 (1st Cir. 1998).  Thus, even if an evidentiary ruling is erroneous, we will not disturb the jury's verdict "if it is highly probable that the error did not affect the outcome of the case."  McDonough v. City of Quincy, 452 F.3d 8, 19-20 (1st Cir. 2006).

A.    OSHA Regulations

At trial, Pelletier sought to introduce a number of OSHA regulations, as well as Massachusetts Building Code regulations. The district court admitted some of those regulations, but excluded two at issue here: 29 C.F.R. § 1926.20(b)(2) and (3).  These two regulations state in their entirety:

> § 1926.20 General safety and health provisions.
>
> . . .
>
> (b) Accident prevention responsibilities.
>
> . . .

-8-

(2) Such programs shall provide for frequent and regular inspections of the job sites, materials, and equipment to be made by competent persons designated by the employers.

(3) The use of any machinery, tool, material, or equipment which is not in compliance with any applicable requirement of this part is prohibited. Such machine, tool, material, or equipment shall either be identified as unsafe by tagging or locking the controls to render them inoperable or shall be physically removed from its place of operation.

The district court found that Pelletier had not laid an adequate foundation for the introduction of these regulations; we see no abuse of discretion in the court's ruling. The challenged regulations appear in Part 1926 of 29 C.F.R., entitled "Safety and Health Regulations for Construction." 29 C.F.R. § 1910.12(a) provides that "[t]he standards prescribed in Part 1926 of this chapter . . . shall apply . . . to every employment and place of employment of every employee engaged in construction work." "Construction work" is defined to be "work for construction, alteration, and/or repair, including painting and decorating." 29 C.F.R. § 1910.12(b). The § 1926 regulations would thus only have been relevant if Pelletier was an "employee engaged in construction work." Id. § 1910.12(a). Pelletier failed to establish an evidentiary basis for such a finding.

Pelletier argues that an adequate foundation was laid through the testimony of James Brown, Main Street's safety manager, and the testimony of Paula Vaccaro, the OSHA inspector who

investigated the accident. Brown, however, testified merely that he "considered it [a] construction site," and he indicated that he "was not as familiar with" § 1926. The district court did not abuse its discretion in finding Brown's testimony insufficient to establish that the old mill was a construction site within the meaning of the OSHA regulations. Similarly, Vaccaro issued OSHA citations, but she did so on the basis of § 1910, the general regulations applicable to all industries, rather than the § 1926 construction regulations. Vaccaro testified that she "strictly did [§] 1910" investigations and that the conditions at the old mill had not prompted her to "inquir[e] as to whether or not Main Street had violated the construction code, [§] 1926." Thus, Vaccaro's testimony did not establish a foundation for the admission of the § 1926 regulations.

Pelletier argues that nonetheless the applicability of § 1926 to his work was clear on the face of the regulations. Whether Pelletier was engaged in "construction, alteration, and/or repair" is hardly self-evident, however, and cannot be determined from the regulations alone. See 29 C.F.R. § 1926.13(a) (stating that the interpretation of the terms "construction," "alteration," and "repair" in the Davis-Bacon Act "have considerable precedential value in ascertaining the coverage of" § 1926); id. § 4.116(b) (stating that "the demolition or dismantling of buildings or other structures" on a site with "no further construction activity at the

site" is not construction, alteration, or repair under the Davis-Bacon Act). OSHA has noted that the determination of what constitutes construction work "must be made on a case-by-case basis, taking into account all information available at a particular site." OSHA Standard Interpretation, Construction vs. Maintenance, August 11, 1994. In the absence of any developed legal or factual basis for applying the § 1926 regulations, Pelletier cannot rely on the language of the regulations, standing alone, to establish their applicability.

Moreover, the exclusion of the § 1926 regulations did not affect Pelletier's "substantial rights." See Fed. R. Civ. P. 61. Other OSHA regulations and Main Street's own safety policies were admitted, and both of these established a standard of care that was substantially similar to the standard established in the excluded regulations. Main Street's safety policy specifically provided that the safety director was responsible for "[i]nspections" to ensure "compliance with OSHA safety laws and regulations." This essentially captured the requirement in 29 C.F.R. § 1926.20(b)(2) of "frequent and regular inspections of the job sites, materials, and equipment."

Similarly, 29 C.F.R. § 1910.178(p)(1), which was admitted at trial, provides that "[i]f at any time a powered industrial truck is found to be in need of repair, defective, or in any way unsafe, the truck shall be taken out of service until it has been

-11-

restored to safe operating condition." Since the forklift, a powered industrial truck, was the only piece of "machinery, tool, material, or equipment" that Pelletier had alleged was unsafe, the requirement in 29 C.F.R. § 1926.20(b)(3) to render all such unsafe equipment inoperable or to physically remove such equipment would have been superfluous.

Pelletier appears to argue that the § 1926 regulations were necessary to show Main Street's, as opposed to Three D's, safety responsibilities. The regulations on their face, however, do not purport to establish who is responsible for what requirements, and Pelletier has not cited anything that suggests that the rules in this regard differ depending on whether the work is construction work. For example, OSHA Directive CPL 02-00-124, Multi-Employer Citation Policy, December 10, 1999, which describes the responsibilities of "controlling employers," applies "OSHA-wide." If Pelletier had wanted to introduce additional evidence to demonstrate Main Street's responsibilities, he could have done so without regard to whether the construction regulations were admitted; the exclusion of those regulations had no material effect on his case.

B.       Safety Expert's Testimony

Pelletier describes two different types of testimony by Richard Twomey, his safety expert, that he argues were improperly excluded. First, he asserts that Twomey should have been permitted

to testify about the applicability of OSHA regulations to Main Street's conduct.  Second, he claims that Twomey should have been permitted to testify about industry customs and practices of safety.

As to testimony about the OSHA regulations, the general rule is that it is the judge's role, not a witness's, to instruct the jury on the law.  See Nieves-Villanueva v. Soto-Rivera, 133 F.3d 92, 99 (1st Cir. 1997).  A district court has broad discretion to exclude expert opinion evidence about the law that would impinge on the roles of the judge and the jury.  See N. Heel Corp. v. Compo Indus., Inc., 851 F.2d 456, 468 (1st Cir. 1988).  For this reason, and to avoid jury confusion, the district court in this case acted well within its discretion in excluding expert testimony about the applicability of OSHA regulations to Main Street.

Pelletier cites cases in which experts were permitted to testify about the law applicable to the case.  In general, it can be within the district court's discretion to admit or exclude particular expert testimony, such that neither judgment will be reversed on appeal.  See Univ. of R.I. v. A.W. Chesterton Co., 2 F.3d 1200, 1218 (1st Cir. 1993).  More importantly, the cases Pelletier cites are inapposite because they involve situations in which the proper interpretation of the law is itself a factual issue in the case, as when the defendant claims that his interpretation of the law was reasonable, even if incorrect.

See, e.g., United States v. Garber, 607 F.2d 92, 96-98 (5th Cir. 1979) (en banc) (reversing the exclusion of expert testimony to show that defendant reasonably believed no tax was due); see also Gomez v. Rivera Rodriguez, 344 F.3d 103, 115, 119 (1st Cir. 2003) (reversing the exclusion of testimony about legal advice given to the defendant to show the defendant's motivation for terminating plaintiffs' employment). In this case, Pelletier offered the expert testimony to show what the regulations meant, not to show what he thought they meant, and thus cases like Garber have no application here.

The most difficult issue in this case is the limitation of the testimony purportedly proffered as to industry custom and practice. Pelletier is correct that in general, the customs and practices of an industry are proper subjects for expert testimony. See Levin v. Dalva Bros., 459 F.3d 68, 79 (1st Cir. 2006). Pelletier is also correct that under Federal Rule of Evidence 703, an expert may base his opinion on trial testimony or on information conveyed to him prior to trial. See Almonte v. Nat'l Union Fire Ins. Co., 787 F.2d 763, 770 (1st Cir. 1986). Thus, the fact that Twomey "had never visited the Old Mill," as the district court noted, would not alone be reason to exclude his testimony about customs and practices.

The Federal Rules of Evidence, however, "do not afford automatic entitlements to proponents of expert testimony." Univ.

-14-

of R.I., 2 F.3d at 1218.  At trial, Pelletier's counsel proffered Twomey's testimony "as to safety practices at Main Street" and "on the unsafe practices that he saw going on there."  The district court appears to have excluded the testimony not because Twomey lacked personal knowledge per se, but because in the absence of a personal inspection of the facilities or equipment at issue, Twomey would have had insufficient information on which to base his opinion.  See Fed. R. Evid. 702 (requiring that expert testimony be "based upon sufficient facts or data").

The district court's concern about the basis and content of Twomey's testimony was warranted, particularly given that Pelletier never clearly stated what customs and practices Twomey would testify to.  Pelletier failed to make any more specific offer of proof.  See Fed. R. Evid. 103(a)(2); see also Harrison v. Sears, Roebuck & Co., 981 F.2d 25, 30 (1st Cir. 1992).  Twomey's report gave little indication that his opinion was based on general industry customs and practices, focusing instead on Main Street's safety policies and numerous regulations, codes, and standards.  As the district court noted, it gave Pelletier several different opportunities to explain why Twomey's testimony was admissible.  Given the shifting explanations and the broad articulation of the proffer, there was some reason to suspect that the "customs and practices" referred to were merely the OSHA regulations, without referring to them as such.  We are unable to say that the district

-15-

court abused its wide discretion in refusing to allow Twomey's testimony as proffered.

In any event, if there was any error here, it did not affect Pelletier's substantial rights. Because Twomey had no personal knowledge about conditions at the old mill, his testimony on customs and practices could only have gone toward establishing the standard of care. The court did allow testimony about the appropriate standard of care, and the evidence admitted, in the form of applicable regulations and Main Street's safety policies and past practices, was more than sufficient to establish the standard of care. Pelletier makes no argument that the proffered evidence of custom and practice would have established a higher standard of care than that established by the remaining evidence.

The focus of the trial was not on the standard of care, but rather on whether responsibility lay with Three D Rigging and Pelletier himself. As the district court noted, the evidence tended to show that "Main Street did not control the means or method of work of [Three D Rigging] or its employees," and that "a large oil spill on the floor . . . was an open and obvious danger." Thus, the proffered testimony about industry practices was largely immaterial.

### III.

We find no abuse of discretion in the challenged evidentiary rulings and no prejudice to Pelletier from those

-16-

rulings.  The judgment of the district court is <u>affirmed</u>.  Costs are awarded to the appellees.