Walter Jimenez **CARRELO** and Jennifer Gonzalez Asencio, Plaintiffs,

v.

**ADVANCED NEUROMODULATION SYSTEMS, INC.;** St. Jude Medical Puerto Rico, LLC, Defendants.

CIV. No. 09–1671(PG).

United States District Court, D. Puerto Rico.

March 8, 2011.

Jorge M. Izquierdo–San–Miguel, Izquierdo–San Miguel Law Office, San Juan, PR, for Plaintiffs.

Raul M. Arias–Marxuach, Alejandro J. Cepeda–Diaz, McConnell Valdes, San Juan, PR, for Defendants.

### OPINION AND ORDER

JUAN M. PEREZ–GIMENEZ, District Judge.

Co-defendants Advanced Neuromodulation Systems ("ANS") and St. Jude Medical Puerto Rico, LLC ("St. Jude") (collectively, "Defendants") bring the motion in limine to strike the April 9, 2010 Preliminary Report and expected testimony proffered by Theodore Milo ("Milo") that presently stands before the Court (Docket No. 37). Milo serves as the expert witness for Walter Jimenez Carrelo and Jennifer Gonzalez Asencio ("Plaintiffs"). The Court deems Defendants' motion to be unopposed due to Plaintiffs' failure to submit their opposition in a timely manner (Docket No. 44). For the following reasons, the Court **GRANTS** Defendants' motion in limine.

### I. Discussion

Defendants submitted their motion in limine to strike Plaintiffs' preliminary report and expected testimony on November 2, 2010, which presently stands unopposed before this Court due to Plaintiffs' failure to submit their response in a timely manner (Docket No. 44). In essence, Defendants' motion in limine argues that Plaintiffs' expert testimony is inadmissible because it is not based upon sufficient facts and data and because the report invades the province of the Court and the jury.

### A. Admissibility of Expert Testimony

 "The admissibility of expert testimony is governed by Fed.R.Evid. 702." *Allen v. Martin Surfacing,* 263 F.R.D. 47, 52 (D.Mass.2009). Rule 702 states: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed.R.Evid. 702. The Supreme Court found that Rule 702 imposes a duty upon the court to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). As a result, Federal Rule of Evidence 702 imposes an important gatekeeper function on judges by demanding that they ensure that three requirements are met before admitting expert testimony: (1) the proposed expert is qualified by knowledge, skill, experience, training or education; (2) the proposed subject matter of the expert opinion properly concerns scientific, technical, or other specialized knowledge; and (3) the testimony is helpful to the trier of fact, i.e., whether it rests on a reliable foundation and is relevant to the facts of the case. *See* Fed.R.Evid. 702; *Daubert,* 509 U.S. at 589, 113 S.Ct. 2786 (discussing the trial judge's role in screening scientific expert testimony for reliability and relevancy); *see also Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 141, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) (extending *Daubert*'s gatekeeping obligation to technical and other specialized expert testimony); *Martin Surfacing,* 263 F.R.D. at

52 (citing *Bogosian v. Mercedes–Benz of N. Am., Inc.*, 104 F.3d 472, 476 (1st Cir. 1997)).

■ "*Daubert* does not require that a party proffering expert testimony convince the court that the expert's assessment of the situation is correct, but rather, [a]s long as an expert's scientific testimony rests upon good grounds it should be tested by the adversary process-competing expert testimony and active cross-examination-rather than excluded from jurors' scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies." *U.S. v. Perocier*, 269 F.R.D. 103, 107 (D.P.R.2009) (citing *Ruiz–Troche v. Pepsi Cola of Puerto Rico Bottling Co.*, 161 F.3d 77, 85 (1st Cir.1998)).

■ Therefore, a district court must ensure that expert testimony be relevant in the sense that it must have "a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Daubert*, 509 U.S. at 592, 113 S.Ct. 2786. Furthermore, the Court must ensure that the expert opinion is relevant, sufficient and reliable.

■ "As to relevance, expert testimony must be relevant not only in the sense that all evidence must be relevant, but also in the incremental sense that the expert's proposed opinion, if admitted, likely would assist the trier of fact to understand or determine a fact in issue." *Ortiz–Semprit v. Coleman Co., Inc.*, 301 F.Supp.2d 116, 119 (D.P.R.2004) (citing *Ruiz–Troche v. Pepsi Cola of P.R. Bottling Co.*, 161 F.3d 77, 81 (1st Cir.1998)) (internal citations omitted). Moreover, the Court need not follow any particular procedure in the exercise of its gatekeeping function. *Id.* (citing *United States v. Diaz*, 300 F.3d 66, 73 (1st Cir.2002)).

Rule 702 requires that expert testimony be based upon sufficient facts or data. Fed.R.Evid. 702. The Supreme Court addressed this sufficiency standard in *General Elec. Co. v. Joiner* where it was found that evidence was properly excluded where the experts' opinions were not sufficiently supported by the studies on which they purported to rely.[1] 522 U.S. 136, 144–146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997).

■ The First Circuit has held that a challenge to the factual underpinnings of

1. The *Joiner* Court stated: "Respondent points to *Daubert*'s language that the focus, of course, must be solely on principles and methodology, not on the conclusions that they generate. He claims that because the District Court's disagreement was with the conclusion that the experts drew from the studies, the District Court committed legal error and was properly reversed by the Court of Appeals. But conclusions and methodology are not entirely distinct from one another. Trained experts commonly extrapolate from existing data. But nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered. That is what the District Court did here, and we hold that it did not abuse its discretion in

so doing." *Joiner*, 522 U.S. at 146, 118 S.Ct. 512. In said case, the district court that reviewed the evidence determined that four submitted studies were unreliable because the submitted animal studies showed that the mice in the studies received massive doses of the purported carcinogen at a much higher concentration than the plaintiff was exposed to and those mice developed not cancer but a different condition. *Id.* at 144, 118 S.Ct. 512. The district court also determined that the submitted epidemiological studies were inadmissible because the first failed to show a link between the purported carcinogen and cancer, the second was not statistically significant and the authors did not suggest a link between the carcinogen and cancer, and the third and fourth studies because the participants in those studies had not been exposed to the purported carcinogens or had been exposed to many different carcinogens. *Id.*

an expert opinion is a matter that affects the weight and credibility of the testimony and is a question that should be resolved by the jury. *United States v. Vargas*, 471 F.3d 255, 264 (1st Cir.2006) (citing *Int'l Adhesive Coating Co. v. Bolton Emerson Int'l, Inc.*, 851 F.2d 540, 545 (1st Cir. 1988)). As a result, expert opinions that are speculative do not need to be excluded as long as the opposing counsel has an opportunity for cross-examination in order to expose any weaknesses in the underpinnings of the expert testimony. *Id.*

██ Rule 702 also requires that expert testimony be achieved via reliable principles and methods. Fed.R.Evid. 702. The Supreme Court has delineated several factors that a court may consider in determining the reliability of scientific evidence: "(1) whether the theory or technique can be and has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; and (5) general acceptance in the scientific community." *Daubert*, 509 U.S. at 593–595, 113 S.Ct. 2786.

██ Lastly, a district court has discretion to decide whether a pre-trial hearing is appropriate in order to determine the admissibility of expert testimony. *Perocier*, 269 F.R.D. at 109 (citing *Carmichael*, 526 U.S. at 152, 119 S.Ct. 1167); *United States v. Diaz*, 300 F.3d 66, 74 (1st Cir. 2002).

Turning to the case at bar, Defendants' argue that Milo's testimony should be stricken because: (1) his opinion as to the purported failure to warn claim is based on insufficient facts and data; (2) his opinion about a purported manufacturing defect also rests on insufficient facts and data; and (3) his opinion as to whether or not Plaintiffs' claims are preempted invades the province of the Court and the jury.

**B. Failure to Warn**

██ Defendants posit that Milo advances opinions that are based on insufficient facts and data and should therefore be excluded because they are unreliable. As the Court has discussed, there exists a distinction between the sufficiency and the reliability of proof. The Court finds that Defendants' motion simply merges these two lines of analysis in an effort to convince the Court that Milo's testimony should be stricken. Nonetheless, the Court concludes that the Milo's opinion is unreliable, as well as insufficient.

Defendants advance the argument that Milo's opinion about the failure to warn claim is inadmissible because Milo did not examine the Patient Programmer User's Guide that came with the EON IPG, which discloses that the EON IPG needs to be recharged. Defendants further claim that Milo was unaware that the Patient Programmer, a device that allows the patient to control stimulation, given to Jimenez Carrelo has a diagnostic screen that advises the user when the EON IPG battery is low.

It is clear from Milo's deposition that, though he may be qualified to offer an expert opinion as to whether Jimenez Carrelo was adequately warned, he has never spoken with Jimenez Carrelo. Moreover, Milo does not know what documentation Jimenez Carrelo received after the EON IPG was implanted (Docket No. 37, Exhibit 3). Milo states in the same deposition that he has not examined any documentation provided to Jimenez Carrelo related to instructions, warnings, indications and contraindications for the EON IPG device (Docket No. 37, Exhibit 3). As such, it is unclear to this Court how Milo arrived at his conclusion that Jimenez Carrelo was not properly warned.

Therefore, the Court concludes that this expert opinion is wholly speculative. As

has been already discussed, the law of our Circuit does not necessarily preclude speculative expert opinions from reaching the jury.

Despite the difficulties in interpreting Defendants' argument of sufficiency and reliability, the Court also concludes that Milo's expert opinion fails to demonstrate that it was achieved in a "scientifically sound and methodologically reliable fashion." *Thorndike v. DaimlerChrysler Corp.*, 266 F.Supp.2d 172, 175 (D.Me.2003), (citing *Ruiz–Troche v. Pepsi Cola of P.R. Bottling Co.*, 161 F.3d 77, 81 (1st Cir. 1998)). Upon a reading of Milo's report, as well as his deposition, it is clear to the Court that Milo's opinion is not premised on any of the factors suggested in *Daubert.* In fact, Milo's report and deposition provide no information as to how there was a failure to warn aside from the fact that he received that information from Plaintiffs' counsel. Thus, the Court is unable to find anything that would justify admitting this section of his report or his testimony.

The lack of foundation for Milo's conclusion indicates that his opinion is unreliable, as well as insufficient. Therefore, the Court **GRANTS** Defendants' motion to strike Milo's preliminary report and expected testimony regarding Plaintiffs' failure to warn claim.

## C. Manufacturing Defect

Defendants also object to Milo's proffered testimony that the EON IPG was defectively manufactured because the opinion rests on insufficient facts and data. The Court has already granted Defendants' summary judgment petition as to Plaintiffs' manufacturing defect claim. Therefore, a discussion of whether Milo can provide his opinion regarding any manufacturing defects would be entirely academic.

As a result of the foregoing, the Court finds it unnecessary to engage in a discussion of the applicable caselaw and **GRANTS** Defendants' motion to strike Milo's preliminary report and expected testimony regarding the defective manufacture of the EON IPG.

## D. Expert Testimony as to Preemption

Lastly, Defendants argue that Milo's opinions as to whether or not preemption applies pursuant to the Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 360k(a), should be stricken. Defendants argue that whether or not preemption applies is a legal question and that Milo's opinion invades the province of the Court and the jury.

A district court has broad discretion to exclude expert opinion evidence about the law that would impinge on the roles of the judge and the jury. *Pelletier v. Main Street Textiles, LP*, 470 F.3d 48, 54 (1st Cir.2006). Moreover, statements that pretend to draw ultimate legal conclusions do not properly assist the trier of fact because they invade the province of the jury. *Carballo Rodriguez v. Clark Equipment Co.*, 147 F.Supp.2d 81, 85 (D.P.R.2001) (citing *Nieves–Villanueva v. Soto–Rivera*, 133 F.3d 92, 100 (1st Cir. 1997)).

In his report, Milo proffers that preemption does not bar Plaintiffs' claims in light of the applicable statutes. Although an expert may opine on an issue of fact within the jury's province, he may not give testimony stating ultimate legal conclusions based on those facts. *Allen v. City of New York*, 466 F.Supp.2d 545, 548 (S.D.N.Y.2006) (citing *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir.1994)). In the instant case, Milo is offering a legal interpretation as to why preemption does not apply. In other words, Milo is telling the jury what decision to make when he

states that preemption is inapplicable in light of the relevant statutes (Docket No. 37, Exhibit 2). As a result, Milo is stepping outside of his role as an expert tasked with providing an opinion in order to enable the jury to reach its own determination. Accordingly, the Court concludes that Milo's proffered testimony regarding the applicability of the FDCA and the relevant sections of his report should be stricken.

Therefore, the Court **GRANTS** Defendants' motion to strike Milo's preliminary report and expected testimony regarding whether or not preemption applies pursuant to the FDCA.

## II. Conclusion

For the reasons stated above, the Court **GRANTS** Defendants' motion in limine to strike Plaintiffs' expert report and expected testimony.

**IT IS SO ORDERED.**